# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2022

Lyle W. Cayce
Clerk

No. 21-40397

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

VIRGILIO CESAR LUNA-GONZALEZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CR-1662-1

Before HIGGINSON, WILLETT, and HO, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

In this sentencing appeal, Appellant pleaded guilty to violating 18 U.S.C. § 922(g)(5)(A), which makes it unlawful for aliens illegally in the country to possess firearms. But he insists the district court erred at sentencing by applying § 2K2.1(a)(4)(B) of the Sentencing Guidelines, which imposes an elevated base offense level if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." Appellant contends that the United States failed to prove that (1) the firearm and magazine were compatible, and (2) the firearm could fire

No. 21-40397

multiple rounds without reloading. Because we agree with Appellant's first challenge, we VACATE and REMAND for resentencing.

*     *     *

The controlling standard of review is well settled. "We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error."[1] And the Government bears the burden of showing, by a preponderance of the evidence, the facts necessary to support an elevated base offense level.[2]

Against this backdrop, two points justify reversal. First, the United States introduced zero evidence (let alone a preponderance) proving that the large-capacity magazine was compatible with Appellant's firearm. The "compatibility" requirement comes straight from the text of the Guidelines: a firearm must be "*capable* of accepting a large capacity magazine."[3] We need not catalog the many ways the United States could have satisfied this burden.[4] Suffice it to say, the United States' unsworn response to

---

[1] *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021).

[2] *See id.*

[3] U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) (emphasis added).

[4] *See, e.g.*, *Abrego*, 997 F.3d at 313 (commenting that evidence "of what kind of magazines come standard with [a particular] firearm[] . . . might suffice if the Government [also] demonstrate[s] that [the appellant] bought the firearm either directly from the manufacturer or in the exact same condition as marketed"); *see also, e.g.*, *United States v. Torres*, 489 F. App'x 968, 970 (8th Cir. 2012) (concluding a firearm was "capable of accepting" the large-capacity magazine given evidence both describing and demonstrating how to "fit the large capacity magazine to the rifle").

No. 21-40397

Appellant's written objections—stating "the accompanying magazine fits the aforementioned weapon"—was not one.[5]

Second, we reject the United States' invitation to rely on proximity as a cure-all.[6] Though it is true the Guidelines' commentary states that an elevated base offense level comes into play under § 2K2.1 when a large-capacity magazine is either "attached" or "in close proximity" to a qualifying firearm, both derive from the Guidelines' unambiguous requirement that the firearm *be capable of accepting* the magazine.[7] We are aware of no case suggesting that proximity alone can obviate the compatibility

---

[5] *See, e.g.*, *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007) ("[U]nsworn assertions of the government's attorney do not provide a sufficiently reliable basis for a . . . sentence.").

[6] The United States originally claimed that the Presentencing Report stated that the magazine was emblazoned with a serial number that matched the manufacturer of the firearm. But the serial number was obviously that of the firearm. To its credit, the United States conceded as much before oral argument. We are therefore left only with the bare, unsupported notion of proximity.

[7] *See generally* U.S.S.G. § 2K2.1(a)(4)(B).

No. 21-40397

requirement.[8] The reason, of course, is that such a reading of § 2K2.1 makes no sense.[9]

Compatibility is what distinguishes a large-capacity magazine from a mere paperweight. The commentary's definitional focus on proximity or attachment serves to prevent "[c]riminals [from] escap[ing] the heightened base level by keeping their magazines *next* to their guns rather than *attached* to their guns."[10] But closeness does not supplant compatibility; the magazine must actually fit. Here, the Government failed to prove what the text plainly

---

[8] Instead, there are countless cases in which the United States provided *some* evidence of compatibility. *See, e.g.*, *United States v. Rosa*, 698 F. App'x 222, 223 (5th Cir. 2017) (rejecting challenge to compatibility in part because of testimony that "the drum magazine found in [the appellant's] bedroom [was] a Glock magazine … and [was] compatible with the [Glock] pistol found in his bedroom"); *United States v. Davis*, 668 F.3d 576, 576–79 (8th Cir. 2012) (rejecting a challenge given testimony that the firearm would "accept" the magazine). Even cases invoked by the United States—*e.g.*, *United States v. Longoria*, 958 F.3d 372, 375 (5th Cir. 2020)—involved evidence that some of the large-capacity magazines were attached to (and thus compatible with) their semi-automatic counterparts. Though the United States claimed at oral argument that these precedents reflect little more than prosecutors around the country going above and beyond their obligation under the Guidelines as a matter of prosecutorial grace or trial "strategy," the United States declined our invitation to double-down on this dubious claim in its post-argument letter brief. *See* United States' Supplemental Letter Brief 2–4 (Apr. 29, 2022) (abandoning yet another position upon "further review"). Government prosecutors, after all, have a heightened ethical obligation that transcends the role of a mere adversary. As "representative not of an ordinary party to a controversy, but of a sovereignty," the prosecutor's interest "is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

[9] The United States confessed at oral argument that its position "may be absurd." Oral Argument at 26:35–26:41 ("Do I have to say that out loud? Yes."). Suffice it to say, we agree.

[10] *United States v. Evans*, 958 F.3d 1102, 1108 (11th Cir. 2020).

No. 21-40397

requires—that Appellant's "offense involved a . . . semiautomatic firearm . . . capable of accepting a large capacity magazine."[11] Game over.

*　　*　　*

Because the Government's position on compatibility is incompatible with the law—and plainly so—we VACATE Appellant's sentence and, acceding to Appellant's request,[12] REMAND for resentencing.

---

[11] *See, e.g.*, *United States v. White*, 842 F. App'x 894, 898–900 (5th Cir. 2021) (holding that there was insufficient evidence to show by a preponderance that the enhanced base level applied).

[12] We offer no view on whether the United States *should* get another bite at the sentencing apple in cases like this. *Compare Jones*, 475 F.3d at 707 (vacating and remanding for resentencing due to insufficient evidence, barring re-application of the unsupported enhancement), *with United States v. Green*, 360 F. App'x 521, 525 (5th Cir. 2010) (per curiam) (vacating and remanding for resentencing due to insufficient evidence, no limits). Appellant requested a remand for resentencing—nothing more. We thus decline to *sua sponte* delay relief (collaterally contributing to Appellant's unjustified term of imprisonment, which will run its course in the coming months) so we can contemplate a remedy that Appellant has not solicited.